```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

LINDA A. SWIGONSKI,

                      Plaintiff,        07-CV-385

                                            **DECISION**
            v.                        **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                      Defendant.

## **INTRODUCTION**

Plaintiff Linda A. Swigonski ("Plaintiff") brings this action pursuant to section 405(g) of the Social Security Act ("Act"), 42 U.S.C. §405(g), to review the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income benefits ("SSI").[1] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ"), Bruce R. Mazzarella, denying her application for benefits, was not supported by substantial evidence in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) on grounds that the ALJ's decision was supported by substantial evidence. For the reasons set forth below, the Court finds that the decision of the Commissioner is

---

[1] This case was transferred to the undersigned by the Honorable John T. Curtin, Judge, United States District Court for the Western District of New York by Order dated September 28, 2009.

supported by substantial evidence in the record and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

On March 27, 2002, Plaintiff, who was 47 years old at the time, filed an application for disability insurance benefits alleging disability beginning on August 3, 2000, the date on which she sustained an injury at work, due to herniated discs, degenerative disc disease, carpal tunnel syndrome, depression, bleeding, and vision problems.[2] The Plaintiff's application was denied, and she subsequently filed a timely request for a hearing. (Transcript 40)(hereinafter "Tr."). An administrative hearing was held on September 9, 2004, attended by Plaintiff and her attorney, Paul M. Pochepan. (Tr. 511). At the hearing, the ALJ granted Plaintiff's request to reopen her prior application pursuant to 20 C.F.R. §404.987, since the Plaintiff had filed a new application within one year of the date of notice of the initial adverse determination. (Tr. 14). In a decision dated October 18, 2004, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals

---

[2] Plaintiff had previously filed an application for disability insurance benefits on April 13, 2001, additionally alleging diverticulitis. This request for benefits was denied on August 27, 2001. (Tr. at 30).

Council denied Plaintiff's request for review on April 24, 2007. (Tr. 6-8). This action followed.

## DISCUSSION

**I. Jurisdiction and Scope of Review**

Title 42, section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976). This section is applicable to SSI cases pursuant to 42 U.S.C. section 1383(c)(3). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this Court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhard, 335 F.3d 99,

105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990)(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The Commissioner moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of social Security, with or without remanding the cause for a rehearing." Judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that "the Plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II. Standard for Entitlement to SSDI Benefits**

Under the Social Security Act, a disability is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months..." 42 U.S.C. §423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance); 42 U.S.C. §1382c(a)(3)(A)(concerning SSI payments). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. §§423(d)(2)(A) and 1382c(a)(3)(b).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

In determining whether or not a claimant is disabled, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

(1) if the claimant is performing substantial gainful work, he is not disabled;

(2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

(4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is not disabled;

(5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v)(2009)

**III. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In determining that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administrations' five-step sequential analysis. See 20 C.F.R. §404.1520. At step 1 of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the

alleged onset of disability. (Tr. 26). At step 2, the ALJ found that Plaintiff had the following "severe" impairments: chronic back discomfort, obesity, sleep apnea, and depression. (Tr. 16, 26). He also concluded that Plaintiff's complaints of carpal tunnel syndrome, heel spurs, and acid reflux did not constitute "medically determinable severe impairments within the meaning of the Regulations." (Tr. 16). At step 3, the ALJ found Plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P. (Tr. 26). While the ALJ found Plaintiff could not perform her past relevant work at step 4, he found at step 5 that Plaintiff retained the residual functional capacity ("RFC")to perform a significant range of light work under 20 C.F.R. 404.1567. (Tr. 26-27). Additionally at step 5, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, jobs existed in the local and national economy which Plaintiff could perform. (Tr. 27).

**A. The ALJ properly determined that Plaintiff's carpul tunnel syndrome, heel spurs, and acid reflux are not "severe" within the meaning of the Social Security Act.**

The record supports the ALJ's conclusion (at step 2) that Plaintiff's complaints of carpal tunnel syndrome, heel spurs, and acid reflux are not "severe" within the meaning of the Regulations. With respect to Plaintiff's carpal tunnel syndrome, the ALJ noted that the Plaintiff was not currently receiving treatment, other than from her chiropractor who is "not a medically acceptable or

-7-

authorized treatment source." He acknowledged that she occasionally wore wrist splints, but that she has not had surgery or received other medical care for this problem. Medical examinations indicated that Plaintiff's "hand dexterity [was] well preserved and she demonstrated normal gross and fine manipulation skills and a normal grip." (Tr. 16). These findings are supported by the consultative examinations of Drs. Dutta and Dina. Dr. Dutta stated that Plaintiff's "[h]and dexterity was well preserved," and "[h]istory of bilateral CTS [carpal tunnel syndrome], [was] not documented by physical examination." (Tr. 259-260). Dr. Dina also noted that "[f]ine and gross hand dexterity is normal. Claimant is able to tie shoes, grasp small objects, pick up small objects, hold onto large objects, though she states that it hurts, she is able to do these well. Pincher grasp was noted to be normal bilaterally." (Tr. 361). The record fails to reveal any detailed, contrary opinion from Plaintiff's treating physicians. Therefore, the ALJ's decision that this impairment was not "severe" withing the meaning of the Social Security Act, is supported by substantial evidence.

The Plaintiff testified at the hearing that heel spurs cause occasional pain and are treated by her occasional use of shoe inserts, but that she has never undergone surgical treatment for the same. (Tr. 16, 547). Dr. Dutta's examination corroborates this testimony. Dr. Dutta noted "[p]atient cannot walk on her left heel due to heel spur on the left, but otherwise, gait is normal."

(Tr. 259). However, the record does not contain any other evidence of treatment for the heel spurs that would support the severity of Plaintiff's complaints. Therefore, this Court finds that the ALJ did not err in his determination that this impairment was not "severe" within the meaning of the Social Security Act.

The ALJ also found that the Plaintiff takes "appropriate medication" for her complaint of acid reflux. Plaintiff's treating physician, Raymond J. Tuoti, reviewed the results of the Plaintiff's esophageal biopsy and found mild inflammation, but did not find Barrett's.[3] (Tr. 130, 410). He recommended that Plaintiff continue medications as prescribed and follow up with her primary care physician. Id. Because Plaintiff's acid reflux was controlled through medication, the ALJ properly determined that this impairment was not "severe."

The ALJ also concluded that "[n]one of the above mentioned impairments produce functional limitations that would interfere significantly with the claimant's ability to perform basic work activities." (Tr. 16). This Court finds that the ALJ's decision with respect to these impairments was supported by substantial evidence in the record.

---

[3] Presumably, Dr. Tuoti was referring to Barrett's Esophagus, a potentially pre-cancerous condition. See 15-225 Attorneys' Textbook of Medicine (Third Ed. 2009)]

**B. The ALJ properly determined that Plaintiff's chronic back pain, sleep apnea and depression did not meet or medically equal the listed impairments in Appendix 1, Subpart P of the Regulations.**

The record supports the ALJ's conclusion at step 3, that Plaintiff's complaints of chronic back discomfort, obesity, sleep apnea, and depression are not of Listing level severity. As the ALJ points out, the medical record is sparse. (Tr. 23). Records from her primary care physician, Dr. Abialmouna, when legible, note diagnoses and prescribed medication without elaboration or explanation. Further, the reports of other treating specialists fail to substantiate the severity of Plaintiff's complaints. It is well established ". . . that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004)(citing 20 C.F.R. §404.1512(c)("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled.")) and Bowen v. Yuckert, 482 U.S. 137, 146, n5 (1987)("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." )). Plaintiff in this case has failed to meet this burden.

**1. Chronic Back Pain**

The ALJ's conclusion that Plaintiff's complaint of chronic back discomfort did not rise to Listing level severity is supported by substantial evidence. It is clear that the ALJ was aware of and

considered the opinions of Plaintiff's treating physicians, Drs. Teter and Moreland, along with the opinions of various Agency examining and reviewing physicians. Although the treating physicians' initially diagnosed lumbar radiculopathy, additional diagnostic tests were found to be within normal limits. Dr. Teter suspected lumbosacral radiculopathy, but neurodiagnostic testing (electromyography and nerve conduction studies) was within normal limits, indicating "no electrophysiological evidence of significant radiculopathy, plexopathy, or neuropathy." (Tr. 245-52). Dr. Moreland opined "MRI scan done a year ago of the lumbar spine shows a very subtle disc bulge at L4-5. I think this is a normal age related change. There is no neural compression or instability here. It is my impression that she has an L5 radiculitis. The etiology of this remains unclear. It may be inflammatory or neural compression from disc stenosis or degeneration." (Tr. 298). He recommended a repeat MRI, which is not found in the record. Consultative examiner Dr. Dutta diagnosed Plaintiff with "[d]egenerative [sic] of LS spine with history of herniated disc of L4-L5, L5-S1 with left lumbar root radiculopathy," and he noted Plaintiff's "condition [was] stable...." (Tr. 260). Dr. Dina, also a consultative examining physician, diagnosed "[h]istory of low back pain, lumbar strain [...] [p]rognosis: fair," and noted a normal motor exam and normal reflex. (Tr. 362). Therefore,

Plaintiff's condition, although severe, did not meet or medically equal the impairments listed in Appendix 1, Supbart P.

**2. Depression**

Plaintiff testified that depression was the problem that most interfered with her ability to work. (Tr. 528). However, the record contains substantial evidence to support the ALJ's conclusion that she did not meet Listing level severity for depression. Dr. Jaffri, Plaintiff's treating psychiatrist diagnosed Plaintiff with moderate, recurrent, non-psychotic major depressive disorder, and was considering possible diagnoses of bipolar disorder and adjustment disorder. However, although Dr. Jaffri noted that her symptoms were "compromising her daily functioning," his opinion did not address the degree to which these symptoms impacted her daily functioning. (Tr. 401-03).

The findings from consultative examinations by Frederick E. Smith, Ph.D. and Renee Baskin-Creel, Ph.D. also support the ALJ's conclusion. Dr. Smith diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed moods, moderate recurrent major depressive Disorder, and noted there "appears to be a long standing nature of depression ... [Plaintiff] appears to be somewhat stabilized." (Tr. 265). Dr. Baskin-Creel diagnosed Plaintiff with moderate, non-psychotic major depressive disorder and panic disorder without agoraphobia. Agency physicians who reviewed the records, Drs. Burnett and Moses, also concluded that Plaintiff's

condition did not meet any listings for psychiatric illness. (Tr. 278, 374-91). Thus, the opinions of Plaintiff's own treating physician, two examining physicians, and two non-examining physicians are essentially consistent and provide substantial evidence supporting the ALJ's decision.

### 3. Sleep Apnea

The Commissioner's brief correctly points out that the claimed severity of Plaintiff's sleep apnea is not supported by the record. (Brief at 21). In fact, the Plaintiff testified at the administrative hearing that weight loss "helped some" with sleep apnea. (Tr. 23, 542-43). Plaintiff's sleep apnea does not fall into any of the listings and the severity on the impact upon plaintiff finds no support in the record except for one sleep study. However, plaintiff admitted that her recent loss of weight had helped this claimed impairment (Tr. 23, 542-543). Therefore, this Court finds that the ALJ's decision that these impairments did not meet or medically equal any of the listed impairments in the regulations was supported by substantial evidence in the record.

### IV. The ALJ properly evaluated Plaintiff's subjective complaints in concluding that she had the residual functional capacity to perform a significant range of light work.

Having found that Plaintiff was not presumptively disabled at step 3, the ALJ considered Plaintiff's residual functional capacity. (Tr. 16). He noted that "[w]hile the [Plaintiff] is found to have severe impairments by definition, her allegations of

total disability are not consistent with the record as a whole." (Tr. 22). The ALJ properly considered the opinions of Plaintiff's treating physicians and other sources in finding that Plaintiff could not perform past relevant work, but nonetheless had the residual functional capacity to perform a range of light work.

The regulations provide that the SSA will "consider all [of a claimant's] symptoms, including pain, and the extent to which [these] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" to determine if a claimant is disabled. 20 C.F.R. § 404.1529(a)(2009). In terms of "other evidence," the regulations note that "[s]ince symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." 20 C.F.R. § 404.1529(c)(3)(2009). When the existence of a medically determinable physical or mental impairment that could reasonably be expected to cause a claimant's symptoms has been established, if the ALJ believes the symptoms are not substantiated by objective medical evidence, the ALJ must make a finding about the credibility of the claimant to subsequently determine "the intensity, persistence, and functionally limiting effects of the symptoms" as they relate to the claimant's ability to work. SSR 96-7p. The ruling provides that an ALJ must: obtain additional information when needed to assess credibility; consider seven

enumerated factors;[4] consider the entire case record; and "give specific reasons for the weight given to the individual's statements." Id. As a general rule, it is the Secretary's function to resolve issues of credibility and conflicting evidence where such determinations are supported by substantial evidence and are not inconsistent with the record. Gates v. Astrue, 2009 U.S.App. LEXIS 15643, *2 (2d Cir. 2009)(citing Aponte v. Sec'y, Dep't of Health & Human Servs. Of the United States, 728 F.2d 588 (2d Cir. 1984)).

Here, the ALJ properly evaluated Plaintiff's credibility by considering the factors noted above, by considering the entire case record, and by providing specific reasons for the weight he gave to Plaintiff's statements. The ALJ specifically noted the favorable inference to which Plaintiff is entitled by virtue of her "relatively steady work record," however, the ALJ also listed the factors that weighed against the credibility of her complaints. (Tr. 22).

First, he noted that the New York State Workers' Compensation Board only paid Plaintiff for a partial disability as a result of her work place accident on August 2, 2000. (Tr. 22). In addition,

---

[4] (i) a claimant's daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication a claimant takes to alleviate pain or other symptoms; (v) non-pharmacological other treatments the claimant has sought for relief of symptoms; (vi) any other measures a claimant has used to alleviate symptoms; (vii) and other factors concerning a claimant's functional limitations and restrictions caused by the reported symptoms.

-15-

Plaintiff's claim for benefits pursuant to carpal tunnel syndrome had been closed since 1991. (Tr. 22). Plaintiff also attempted to apply for unemployment insurance benefits, which involves certifying that one is "ready, willing, and *able* to work." (Tr. 23)(emphasis in the original). The ALJ also listed the sparse medical record, particularly with respect to Plaintiff's back impairment, as a reason for his credibility determination.

The ALJ provided a detailed comment on the nature of the medical treatment she sought or lack thereof, the medications she took to alleviate her pain, and other non-pharmacological measures she tried to alleviate pain. He noted that Plaintiff does not see a counselor or therapist for treatment of depression, that she has never required hospitalization for mental illness, and that medication helps alleviate her symptoms. (Tr. 23). The ALJ also noted that Plaintiff is able to engage in activities of daily living that would be inconsistent with the level of disability she alleges. (Tr. 23).

Moreover, the ALJ specifically cited the opinions on which he relied, and the relative weights they were given, in making his physical and mental RFC findings. Although he did not specifically mention the weight he accorded the opinions of Drs. Teter and Moreland, it is clear from the decision that he considered them, and in any event they do not support Plaintiff's claim of disability.

The ALJ stated that the opinion of Plaintiff's treating chiropractor, Dr. Miller, "was given very little weight based on Social Security regulations that such opinions are not to be given the same consideration as those of medical doctors." (Tr. 24). While opinions from chiropractors cannot be used to establish an impairment, such evidence may be considered to determine the severity of a claimant's impairment and how it affects a claimant's ability to work. 20 C.F.R. 1513(a) and (d). The same factors used to weigh opinions from "acceptable medical sources" under 20 C.F.R. 404.1527(d) are used to weigh opinions from "other sources." SSR 06-03p. An adjudicator should also explain the weight given to the various opinions on which he relies, and generally "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning ...." SSR 06-03p.

Here, the ALJ incorrectly stated the weight to be afforded to the opinions of treating chiropractors under the Regulations, however, the ALJ did list the inconsistencies in Dr. Miller's assessments of Plaintiff's physical capabilities over a short period of time that support his conclusion to afford his opinion little weight. (Tr. 18-19). Specifically, the ALJ noted, and the record reflects, that on April 30, 2001 Dr. Miller opined that Plaintiff was limited to lifting/carrying ten pounds or less, sitting for less than six hours per day, and that Plaintiff could

-17-

perform all activities of daily living. Tr. 18, 311-12. However, on June 12, 2001, Dr. Miller opined that Plaintiff could sit for no more than 10 minutes and that she experienced "significant curtailment of activities of daily living." Tr. 18-19, 300-01. Further, the ALJ noted that on April 15, 2004[5] Dr. Miller assessed Plaintiff as capable of lifting ten pounds, standing/walking less than two hours in an eight hour work day without elaborating any further limitation, and sitting less than six hours in an eight hour workday. Tr. 20, 442-43.

Therefore, this Court finds that the ALJ properly considered the opinions of Plaintiff's treating physicians, the medical records, and other relevant evidence in the record in determining the plaintiff's credibility and determining her RFC. The ALJ was entitled to rely on the opinion of the vocational expert in determining whether or not jobs existed in the national economy which the Plaintiff could perform. See Dumas v. Schweiker, 712 F.2d 1554, 1555 (2d. Cir. 1983).

## **CONCLUSION**

Based on the entire record, the ALJ's determination that the plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record.

---

[5] The ALJ appears to have incorrectly stated the date of this evaluation as April 2003; the record reflects the evaluation that appears to correspond to the ALJ's findings as April 2004.

Therefore, I grant the Commissioner's motion for judgment on the pleadings, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
Michael A. Telesca
United States District Judge

DATED: Rochester, New York
       November 4, 2009